```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

ALVARO CARVAJAL,

                    Petitioner,

        -against-                                              07 Civ. 10634(CM)(AJP)

DALE ARTUS, Superintendent,
Clinton Correctional Facility,

                    Respondent.

---------------------------------------------------------------x
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/9/09

## SUPPLEMENTAL MEMORANDUM AND DECISION ADOPTING REPORT AND RECOMMENDATION AS THE DECISION OF THE COURT

McMahon, J.:

This brief memorandum supplements the Report of The Hon. Andrew J. Peck, U.S.M.J., dated October 10, 2008, which the Court adopts as its opinion on the merits.

In 1996, *pro se* petitioner Alvaro Carvajal was convicted, after a jury trial in Supreme Court, New York County, of one count of second degree conspiracy and three counts of first degree criminal possession of a controlled substance. The convictions were affirmed by the Appellate Division: First Department, and ultimately by the New York Court of Appeals. People v. Carvajal, 6 N.Y. 3d 305, 313 (2005).

In his habeas petition, Carvajal challenges the constitutionality of his conviction on the three possession counts. He asserts that the trial court lacked jurisdiction to try him on those counts, because neither he nor anyone he controlled possessed the drugs that were the subject of the indictment in New York. As set forth Magistrate Judge Peck's detailed Report, it is undisputed that Carvajal lived in California during the pendency of the narcotics conspiracy that underlies the indictment, and it is also undisputed that he possessed the drugs referred to in the indictment in California, not in New York. Although the object of the conspiracy was to import the drugs into New York for sale here, the drugs petitioner was convicted of possessing never came into New York. They were seized in California before they could be imported into New York. And while Carvajal came to New York without any drugs on one occasion in furtherance of the conspiracy, he was otherwise located in California, where he was arrested.

Copies mailed/faxed/handed to counsel on 1/7/09

Petitioner does not challenge the sufficiency of his conviction for conspiracy, and there would be no meaningful basis for such a challenge if he had. His other grounds for challenging his conviction, which are fully aired in Magistrate Judge Peck's Report, are inconsequential and utterly without merit.

New York's high court, interpreting a New York State statute (C.P.L. 20.20(1)(c)), concluded that the state was vested with jurisdiction to prosecute Carvajal for possessing drugs outside the state, because he had participated in a conspiracy to import drugs into the state, where they would have been possessed in violation of New York's Penal Law. The cited section of the Criminal Procedure Law permits New York to prosecute a defendant for a substantive offense committed outside the state whenever that defendant engaged in conduct within New York that is sufficient to establish his participation in a conspiracy to commit the underlying substantive offense.

The learned Magistrate Judge recommended that Carvajal's petition be dismissed insofar as he asserted lack of territorial jurisdiction because the New York Court of Appeals' conclusion that New York could exercise jurisdiction over the possession counts (a conclusion reached over a vigorous and well-reasoned dissent) was neither "contrary to" nor an "unreasonable application" of United States Supreme Court precedent concerning the prosecution of defendants in State A for criminal conduct that took place in State B. The particular precedent with which we are here concerned is the Supreme Court's decision in Strassheim v. Daily, 221 U.S. 280 (1911). In Strassheim, the Supreme Court sustained the bribery conviction of Daily, an Illinois resident who paid an illegal gratuity to get a Michigan prison official to agree to sell old machinery as if new to a Michigan prison. Daily paid the bribe to the official in Chicago, but he was prosecuted by the State of Michigan. The Court sustained his conviction, concluding that, "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." Strassheim, *supra.*, 221 U.S. at 285.

As Judge Peck presciently observed, the New York Court of Appeals did not rely on Strassheim's effects test in order to sustain Carvajal's conviction for possession. That is, the Court of Appeals' majority did not purport to "apply" Strassheim, reasonably or unreasonably, to the facts of Carvajal's case. Indeed, the majority did not cite Strassheim, or for that matter any federal case, to support its conclusion; to the contrary, the majority specifically refused to entertain any discussion of federal constitutional law, on the ground that petitioner had failed to raise any federal constitutional challenge to the trial court's exercise of jurisdiction. People v. Carvajal, *supra.*, 6 N.Y. 3d at 316.

Obviously, the New York Court of Appeals' interpretation of C.P.L. 20.20(1)(c) is the last word on what that State statute means. The issue presented by the petition is whether the Court of Appeals' decision that C.P.L. 20.20(1)(c) confers territorial jurisdiction over Carvajal is "contrary to" or "an unreasonable application of" Strassheim. Put otherwise, the question for this court is whether the New York high

2

court's interpretation of the Criminal Procedure Law permitted New York to exercise jurisdiction over the possession counts in violation of Article III, Section 2 of the United States Constitution, which provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; *and such Trial shall be held in the State where the said Crimes shall have been committed* . . . . (Art. III, § 2)(Emphasis added).

Judge Peck's Report includes a lengthy and scholarly discussion of AEDPA's limitations on a district court's review of a state prisoner's habeas petition, and the deference owed to the state court's determination of federal constitutional claims. Judge Peck did not ultimately announce whether this court was bound to give deference to the decision of the New York Court of Appeals or could engage in pre-AEDPA *de novo* review. The issue is more confusing than usual in this particular case. On the one hand, the state court rested its opinion entirely on state substantive law; indeed, the Court of Appeals' majority specifically refused (ostensibly because of a state procedural bar) to discuss any issue of Federal law as determined by the United States Supreme Court. People v. Carvjal, supra., 6 N.Y. 3d at 316. Ordinarily, this would bar petitioner's claim, unless petitioner demonstrated cause and prejudice, or a fundamental miscarriage of justice. On the other hand, despite its explicit reference to petitioner's failure to preserve his federal constitutional challenge, the Court of Appeals' majority implicitly recognized what the dissent flatly stated: because a challenge to territorial jurisdiction addresses whether the State of New York "has the power to hear the case," it does not need to be preserved, cannot be waived, and must always be considered on appeal. *Compare* dissent, 6 N.Y. 3d at 322 with majority opinion, 6 N.Y. 3d at 312. In the end, the state court could not have relied on an independent and adequate state procedural ground to avoid reaching the federal constitutional question that was necessarily inherent in Carvajal's challenge to territorial jurisdiction – no matter what the majority said -- because there can never be a state procedural bar to the court's consideration of the fundamental issue of New York's *jurisdiction* (its *power*) to try the defendant for possessing drugs in California.

Moreover, any state statute that purports to confer power on a state to try a defendant for conduct that occurs out of state is necessarily subject to, and constrained by, the federal constitutional requirement set forth at Art. III § 2. For that reason, whether the state has territorial jurisdiction necessarily presents question of both state and federal law. The constitutionality of a state's exercise of jurisdiction over out-of-state conduct is inextricably intertwined with the meaning of a state law that purports to confer extra-territorial criminal jurisdiction.

What this means is that the New York Court of Appeals – whatever it said – necessarily concluded that C.P.L. 20.20(1)(c), as interpreted by the majority, was not inconsistent with the United States Constitution. Therefore, under the legal principles discussed at pages 45-48 of Judge Peck's Report, this court must defer to the New York

3

Court of Appeals' *sub silentio*[1] determination that C.P.L. 20.20(1)(c) does not run afoul of the United States Constitution.

In his Report, the learned Magistrate Judge conducted an extensive discussion of Strassheim and its progeny in the lower federal courts. In his survey of the case law, Judge Peck noted that Strassheim had been relied on by this and other federal courts to sustain a number of convictions for criminal conduct committed outside the state of prosecution:

(1) In Buffo v. Graddick, 742 F. 2d 592, 594 (11th Cir. 1984), the Eleventh Circuit dismissed a habeas petition filed by a petitioner who was convicted in Alabama of preparing and filing a false appraisal of California property in California, thereby aiding and abetting an Alabama corporation's commission of securities fraud.

(2) In Heath v. Jones, 941 F. 23d 1126, 1138-39 (11th Cir. 1991), the same court denied habeas relief to a petitioner who was prosecuted in Alabama for a murder committed in Georgia, where the petitioner kidnapped the victim in Alabama and transported her across the state line before killing her.

(3) In Gore v. Crosby, 2006 WL 4847609 at *4, 25-27 (M.D. Fla. Jan. 31, 2006), a lower court in the Eleventh Circuit, citing Heath, ruled that Florida's exercise of jurisdiction over an alleged murderer was neither "contrary to" nor an "unreasonable application of" Strassheim where the victim's body was found in Florida, even though the petitioner and victim were only seen together in Tennessee.

(4) In United States v. Woodward, 149 F. 3d 46, 67 (1st Cir. 1998), cert. denied, 525 U.S. 1138 (1999), the First Circuit concluded, in a case that was factually similar to Strassheim, that the Massachusetts legislator who accepted gratuities in Florida could be prosecuted for bribery in Massachusetts.

(5) In United States v. Lee, 359 F. 3d 194, 198-99 and 206-07 (3d Cir ), cert. denied, 543 U.S. 955 (2004), the Third Circuit (in the person of now-Justice Alito), relied on Strassheim to uphold the conviction of an officer of a New Jersey boxing organization under New Jersey's commercial bribery statute, even though the officer both accepted bribes outside New Jersey and agreed to alter boxing ratings outside New Jersey.

(6) The Fifth Circuit concluded, on the basis of Strassheim, that the United States had jurisdiction to prosecute defendants for possession with intent to distribute marijuana, where the drugs were possessed outside the three-mile territorial limit of the United States (but within the twelve-mile "customs waters") because the defendants

---

[1] I do recognize the irony of deferring to a "sub silentio" determination of federal constitutional law in a case where the state court, far from being silent, expressly stated that it was not considering any such issue. And yet, it seems, it did.

4

intended to distribute the marijuana within the United States. United States v. Baker, 609 F. 2d 134, 135-36 and 138 (5th Cir. 1980). The Fifth Circuit also upheld the defendant's conviction for conspiracy to distribute the drugs, even though there was no proof that any act in furtherance of the conspiracy took place within the United States.

(7) This court, in the person of Judge Sweet, went even further, and relied on Strassheim to conclude that the United States could exercise jurisdiction over possession with intent to distribute marijuana under federal law, where the drugs were seized on the high seas some forty miles outside the territorial boundaries of the United States, because the drugs were headed for New York, where they were to be distributed. United States v. Egan, 501 F. Supp. 1252, 1256-57 (S.D.N.Y. 1980). Egan, like petitioner Carvajal here and like the defendant in Baker, was also convicted of conspiracy to distribute narcotics in New York.

(8) Just last year, the Central District of California has similarly rejected a habeas petition from a petitioner who argued that California could not prosecute him for murder committed on the high seas, even though the victim was a California resident. Bechler v. Hedgepath, 2008 WL 833235 at *23-24 (C.D. Cali. Feb. 7, 2008)

(9) And to come full circle to a decision of the one court that really matters in this context, the United States Supreme Court affirmed the judgment of the Supreme Court of Florida, that affirmed the conviction, under Florida state law, of a Florida resident for conduct (sponge fishing) that occurred on the high seas. Skirotes v. Florida, 313 U.S. 69-70 (1941). It bears nothing, however, that no Supreme Court case since Skirotes has extended that case's holding to conduct committed wholly within another state.[2]

In view of the numerous instances in which Strassheim has been applied to justify trying criminal defendants for conduct committed outside the prosecuting state, as long as that conduct had or was intended to have consequences inside the prosecuting state, if the New York Court of Appeals had in fact applied Strassheim to affirm Carvajal's conviction for possessing, in California, drugs that were intended to be imported into New York, I could not say that its application of that precedent was either unreasonable or contrary to the relevant Supreme Court precedent.[3]

However, 1 also agree with Judge Peck that a certificate of appealability should issue so that the Second Circuit can address the territorial jurisdiction issue. It does not appear that our Court of Appeals has addressed this question in the past, and there is very little relevant case law. The cases found by the Magistrate Judge, if parsed on their facts, can all be distinguished from Carvajal's situation on one ground or another. Judge Bundy Smith's dissent in Carvajal is highly persuasive, and his reasoning that no part of the

---

[2] Judge Peck also referenced several state courts that applied Strassheim to convictions under their laws for extra-territorial conduct.

[3] As Judge Peck recognized, the only relevant precedent for AEDPA review purposes is Supreme Court precedent.

5

offense of criminal possession of a controlled substance was committed in New York is echoed in a case decided by the United States Court of Appeals for the Seventh Circuit, United States v. Tingle, 183 F. 3d 719 (7th Cir.), *cert. denied*, 528 U.S. 1048 (1999). As Judge Peck noted, Tingle deals with the issue of venue, not jurisdiction; however, its reasoning gives this court pause in a case where, as Judge Bundy Smith observed, not a single element of the crime of criminal possession of a controlled substance (as opposed to the crime of conspiracy) was in fact committed by the defendant in New York.

In short, while the court understands the State's desire to see this matter end, it appears advisable to accept the Magistrate Judge's recommendation that the Second Circuit look, if it wishes to do so, at the federal constitutional question underlying Carvajal's attack on New York's power to try him for out-of-state drug possession on the basis of his participation in a conspiracy to distribute those drugs in New York.

The Report is adopted as the opinion of the court. The Recommendation is accepted. The Clerk of the Court is directed to enter judgment dismissing the petition and to issue a certificate of appealability limited to the issue of whether New York lacked territorial jurisdiction to try petitioner for the three counts of criminal possession of a controlled substance.

Dated: January 9, 2009

_____
U.S.D.J.

BY HAND TO THE HON. ANDREW J. PECK, U.S.M.J.

BY FIRST CLASS MAIL TO PETITIONER AND RESPONDENT AS FOLLOWS:

Alvaro Carvajal
96A2380
Green Haven Correctional Facility
PO Box 4000
Stormville, NY  12582

Thomas B. Litsky
Assistant Attorney General
120 Broadway
New York, NY  10271

6